Frank S. BERKOSKI, Plaintiff,

v.

ASHLAND REGIONAL MEDICAL CENTER, Defendant.

No. 3:CV–95–1807.

United States District Court,
M.D. Pennsylvania.

Jan. 16, 1997.

---

Paul M. Jennings, Scranton, PA, for plaintiff.

Larry Besnoff, Philadelphia, PA, for defendant.

## MEMORANDUM

VANASKIE, District Judge.

The plaintiff, Frank S. Berkoski (Berkoski), instituted this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 623, alleging that the defendant, Ashland Regional Medical Center (Ashland), discriminated against him on the basis of his gender and age. Ashland has moved to dismiss the complaint, claiming that Berkoski failed to file a charge of employment discrimination with the EEOC within the 300–day filing period.

Specifically, Ashland contends that Berkoski's filing of a complaint with the Pennsylvania Human Relations Commission (PHRC) 272 days after the last alleged discriminatory act did not eliminate the need to make a separate filing with the EEOC within 300 days. Contrary to Ashland's assertion, pertinent terms of a "Worksharing Agreement" between the PHRC and the EEOC effectuated a filing of discrimination charges with the EEOC on the same date he filed his complaint with the PHRC. Therefore, Berkoski's charge was filed in a timely manner, and Ashland's motion to dismiss will be denied.

## I. BACKGROUND

Berkoski was employed by Ashland as a chemical supervisor until December 21, 1992. At that time, Berkoski was demoted to the position of a lab technician. Berkoski alleges that Ashland demoted him because his credentials were insufficient under the Clinical Laboratory Improvement Act of 1988. Berkoski also alleges that his supervisor provided preferential treatment and promotions to female coworkers and discriminated against Berkoski on the basis of his gender. On June 3, 1993, Berkoski alleges that he was constructively discharged by Ashland.

Ashland's motion to dismiss does not deal with the factual allegations of Berkoski's complaint. Instead, Ashland contends that Berkoski failed to file a timely complaint with the EEOC, a prerequisite for an action in federal court.

Berkoski's counsel telefaxed an administrative charge to the PHRC on March 2, 1994, the 272nd day after Berkoski's alleged constructive discharge. (Def's Stat. of Facts (Dkt. Entry 12) ¶ 2.) This document provided that: "This charge will be referred to the EEOC for the purpose of dual filing." (Plf's Opp.Brf. (Dkt. Entry 11) ¶ 27.) Despite this statement, the PHRC did not refer the charge to the EEOC until June 24, 1994, more than 300 days after Berkoski's alleged constructive discharge. (Def's Stat. of Facts (Dkt. Entry 12) ¶ 3.) Ashland contends that Berkoski failed to file an administrative charge with the EEOC within 300 days of his alleged constructive discharge as required under 42 U.S.C. § 2000e–5(c).

## II. DISCUSSION

Ashland's motion to dismiss is supported by several documents outside the pleadings. (Def's Supp. Memo (Dkt. Entry 9); Def's Supp. Exhibits (Dkt. Entry 13)). Further, Berkoski has also included various documents in his opposition papers. (Plf's Opp. Brf. (Dkt. Entry 11); Plf's Stat. of Facts (Dkt. Entry 20)). When matters outside the pleadings are presented to the court, a motion to dismiss is treated as a motion for summary judgment. Fed.R.Civ.P. 12(b).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. There is no issue for trial unless sufficient evidence favors the nonmoving party so that a jury could return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11. Rule 56 requires the entry of summary judgment after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex*, 477 U.S. at 329, 106 S.Ct. at 2555–56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514. The affirmative evidence must consist of verified or documented materials. Mere conclusory allegations or denials taken

from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

■ The facts relevant to Ashland's motion are not in dispute. Berkoski alleges that he was continuously discriminated against on the basis of his age and sex until his constructive discharge of June 3, 1993. (Plf's Stat. of Facts (Dkt. Entry 20) ¶ 1.) On March 2, 1994, 272 days after the alleged constructive discharge, Berkoski filed a verified complaint with the PHRC, contending that Ashland discriminated against him on the basis of his age and sex. (Plf's Opp. Brf. (Dkt. Entry 11) Exhibit 4.) In a prepared agency form, Berkoski checked the following statement: "This charge will be referred to EEOC for the purpose of dual filing." (*Id.* ¶ 27.) On June 24, 1994, more than 300 days after the alleged constructive discharge, the PHRC referred Berkoski's complaint to the EEOC. (Def's Stat. of Facts (Dkt. Entry 12) ¶ 12.)

■ Under 42 U.S.C. § 2000e–5(c), a claim of unlawful discrimination must be filed with the EEOC within 180 days of the unlawful act. *Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 878 (3d Cir.1990). Where a state has established agencies to monitor and correct employment discrimination, the claim must be filed with the EEOC within 300 days of the impermissible employment practice. Once state proceedings have been instituted, however, a claim cannot be filed with the EEOC until the earlier of either (1) sixty days from the filing date of the charge with the state agency; or (2) the date the state agency terminates its proceedings. *Id.* at 879. These rules created a pitfall for the unwary—namely, if a plaintiff filed in the state agency after the 240th day, then he or she was often prohibited from

filing with the EEOC within the 300–day limit provided under 42 U.S.C. § 2000e–5(c). That is, because the plaintiff could not file before 60 days had elapsed from the state filing, a plaintiff who filed after the 240th day would be barred from asserting a claim to the EEOC if the state agency had not terminated its proceedings by the 300th day after the discriminatory act.[1]

■ To correct this problem, the EEOC and local agencies created worksharing agreements through which the local agencies waived the exclusive jurisdiction to any claims filed after the 240th day. *Trevino–Barton,* 919 F.2d at 879. In considering these agreements, the Third Circuit held that the waivers were self-executing and created an instantaneous constructive termination of state proceedings where, as here, the administrative complaint was received by the state agency after the 240th day in the 300–day filing period. *Id.* As a result of such worksharing agreements, a plaintiff may file a complaint after the 240th day, the local agency automatically waives their exclusive jurisdiction, and the EEOC is free to pursue and preserve any of the plaintiff's federal claims.

Ashland apparently reads *Trevino–Barton* differently for it asserts that the PHRC must take action to terminate its proceedings for there to be an effective filing of any charge with the EEOC. (Def's Reply Brf. (Dkt. Entry 14) at 4.) Recently, the Second Circuit cited *Trevino–Barton* as one of seven circuit courts which have concluded that waivers contained in worksharing agreements are self-executing. *Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 311 (2d Cir. 1996) (collecting cases). I agree with the Second Circuit's interpretation of *Trevino–Barton.* Indeed, our Court of Appeals itself observed in *Trevino–Barton* that "courts of appeal have consistently found that ... the waivers in worksharing agreements should be treated as self-executing." 919 F.2d at 879.

A consideration of the *Ford* decision is instructive. In that case, the plaintiff filed

---

1. The reason for this danger is a result of simple arithmetic. If a plaintiff files a claim with the state agency after the 240th day, then he or she must wait 60 days before filing with the EEOC or have the state agency terminate its proceedings before the 301st day arrived.

his charge with the state agency on the 281st day. *Ford,* 81 F.3d at 305. The state agency then conducted a four month investigation before terminating its proceedings. *Id.* The defendants asserted the same argument as Ashland; namely, there could be no waiver until the state agency completed its review. *Id.* The Second Circuit dismissed this argument, noting that the EEOC has "exclusive" jurisdiction by virtue of the state agency's waiver in the worksharing agreement. *Id.* at 310. Because the waiver was self-executing, the plaintiff's claim was filed with the EEOC at the very same moment that it was filed with the state agency notwithstanding the state agency's investigation. *Id.*

■ In the present case, a worksharing agreement does exist between the EEOC and the PHRC. Further, it provides identical protection to the one considered in *Trevino–Barton:* "EEOC will initially process and the [PHRC] hereby waives its right to initially process:—All Title VII charges received by the [PHRC] 240 days or more after the date of the violation." (Plf's Stat. of Facts (Dkt. Entry 20) Exhibit 2, § III(A)(1).)[2] Thus, consistent with *Trevino–Barton,* PHRC proceedings were automatically terminated when Berkoski filed his charge with the PHRC on the 272nd day after the alleged violation.

■ Ashland argues that the waiver of jurisdiction applies only to Title VII claims, and not to ADEA claims. This argument is premised upon the section of the worksharing agreement dealing with the "Division of Initial Charge–Processing Responsibilities." While it is true that this section does not express a waiver of jurisdiction insofar as ADEA claims are concerned, Ashland's argument ignores the fact that there is no state agency deferral period under the ADEA. Thus, there is no need for a waiver of jurisdiction/automatic termination provision for ADEA claims. By virtue of § II(A) of the worksharing agreement, the PHRC served as agent of EEOC for purposes of filing the ADEA claim. Accordingly, all that is required is that the complaint be filed with the PHRC *or* the EEOC within 300 days of the last discriminatory act. *See Colgan v. Fisher Scientific Co.,* 935 F.2d 1407, 1414–15 (3d Cir.1991) (*en banc*), *cert. denied,* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991). Under applicable regulations, *see* 29 C.F.R. §§ 1626.7(c)(1)(iii), 1626.10(b), (c), PHRC's receipt of Berkoski's complaint was the equivalent of Berkoski filing the charge with the EEOC on that date. *See Ford,* 81 F.3d at 308. It is thus clear that the absence of a waiver provision with respect to ADEA claims does not affect the timeliness of Berkoski's filing.

Ashland further contends that regardless of the waiver of jurisdiction and consequent termination of state agency proceedings, this complaint was never *actually* filed with the EEOC until well after the 300 day limit. Although such an argument has facial appeal, it is clear that Berkoski took the appropriate steps to file the document with the EEOC. He submitted a verified complaint with the PHRC with a statement that it was to be referred to the EEOC. The PHRC's failure cannot now bar Berkoski from pursuing his federal claims.[3]

2. Ashland contends that this provision is not applicable. Instead, Ashland points to a provision which states: "The [PHRC] will process: ...—All charges which allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the [PHRC] Ordinance...." (Plf's Stat. of Facts (Dkt. Entry 20) Exhibit 2, ¶ III(A)(2).) Ashland contends that because Berkoski alleged two claims, Title VII and the ADEA, then the PHRC retains exclusive jurisdiction under the worksharing agreement.

In *Ford,* the Second Circuit considered an identical provision in a worksharing agreement between the EEOC and New York State. *Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 310 n. 9 (2d Cir.1996). The Second Circuit held that this provision applied only when a charge contained multiple claims, one of which was cognizable *only* under state law, e.g., discrimination on the basis of marital status. *Id.* ("This potential is not present here, however, because every basis of discrimination alleged by Ford (race, sex, and age) is covered under either Title VII or the ADEA."). Because the allegations asserted by Berkoski are covered under Title VII and the ADEA, the section of the worksharing agreement on which Ashland relied is not pertinent.

3. Ashland contends that Berkoski failed to request that his charge also be filed with the EEOC, arguing that Berkoski failed to follow the procedures set forth in 29 C.F.R. § 1601.13(b)(2), which governs a situation in

In their worksharing agreement, the PHRC and the EEOC have designated each other as agents "for the purposes of receiving and drafting charges." (Plf's Stat. of Facts (Dkt. Entry 20) Exhibit 2, § II(A).) Further, the PHRC has agreed to take all charges which claim a violation of Title VII and the ADEA and "refer them to the EEOC for *dual filing.*" (*Id.* § II(B).) Finally, the worksharing agreement also provides that the PHRC will "make every effort" to forward any charges alleging violations of Title VII and the ADEA to the EEOC "within two working days of receipt." (*Id.* § II(E).) In light of these contractual provisions, Berkoski correctly believed that filing his complaint with the PHRC coupled with a request for dual filing would be sufficient to also file with the EEOC.

Indeed, Berkoski's belief is consistent with governing regulations and case law from other circuits. Under 29 C.F.R. § 1601.13(b)(1):

When a charge is initially presented to [the PHRC] and the charging party requests that the charge be presented to the [EEOC], the charge *will be deemed to be filed* with the Commission upon the expiration of 60 (or where appropriate 120) days after a written and signed statement of facts upon which the charge is based was sent to the [PHRC] by registered mail or was otherwise received by the [PHRC], or upon the termination of [PHRC] proceedings, *or upon waiver of the [PHRC's] right to exclusively process the charge,* whichever is earliest. Such filing is timely if effected within 300 days from the date of the alleged violation.

*Id.* (emphasis added). It has been held that this provision effected an instantaneous termination of the state agency jurisdiction under the waiver agreement, resulting in a simultaneous constructive filing with the EEOC. *Ford,* 81 F.3d at 310; *see also Brown v. Crowe,* 963 F.2d 895, 898 (6th Cir. 1992); *McConnell v. General Tel. Co. of Cal.,* 814 F.2d 1311, 1315–16 (9th Cir.1987) ("Use

of the regulation avoids the unnecessary burden and duplication of filing separate claims with both the state and federal agencies."), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *Cook v. Lee College,* 798 F.Supp. 417, 421 (S.D.Tex.1992) ("Because in May of 1990 the EEOC had a worksharing agreement with the [state agency], which designated the [state agency] as an agent for purposes of receiving charges, charges filed with the [state agency] during the effective period of the worksharing agreement are deemed received by the EEOC for purpose of timeliness.").

In *Worthington v. Union Pacific R.R.,* 948 F.2d 477 (8th Cir.1991), the plaintiff submitted a signed and notarized charge to the state agency on the 299th day. *Id.* at 478. The plaintiff neglected to check a box which stated that the complaint was also to be filed with the EEOC. *Id.* The complaint, however, was addressed to both the state agency and the EEOC. *Id.* The state agency failed to transmit the charge to the EEOC until the 305th day. *Id.* In considering the terms of the worksharing agreement, the Eight Circuit noted that the state agency is deemed an agent of the EEOC. *Id.* at 480. Given the agency relationship, the Eighth Circuit held that the charge had been constructively filed on the 299th day and satisfied the statutory 300 day rule. *Id.* at 482.

Likewise, in *Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472 (9th Cir.1989), the plaintiff filed a charge with the state agency on the 289th day. The state agency failed to forward it to the EEOC until the 301st day. *Id.* at 1474. The Ninth Circuit also noted that the EEOC and the state agency had designated each other as agents under their worksharing agreement. *Id.* at 1476. Thus, the charge was deemed received by the EEOC on the day that it was received by the state agency; it was then held in "suspended animation" until the state finally delivered the charge to the EEOC. *Id.* at 1476. Because the waiver agreement was

---

which the charging party fails to request that a charge be presented to the EEOC. This argument ignores the significance of Berkoski's notation upon a prepared agency form that the charge be referred to the EEOC for dual filing. Berkoski's action is significant because one of

the other available prepared form responses was that the PHRC was not to refer the action to any other agency. Berkoski, therefore, clearly demonstrated his intent that a dual filing occur. Ashland's arguments to the contrary are without merit.

**550**

self-executing, the charge was deemed filed with the EEOC on the date that it was filed with the state agency. *Id.* at 1477.

 Although the Third Circuit has not explicitly addressed this issue, I am convinced that in light of *Trevino–Barton,* it would follow the holdings of the other circuits. As the Second Circuit noted:

> When state agencies unambiguously waive their statutory right to exclusively process certain discrimination claims, they (and the EEOC) have made an arrangement for the benefit of claimants (as well, presumably, for administrative convenience); the timeliness of a claimant's filing therefore *should not be made to depend on whether one or the other agency follows through on its undertakings* under a Worksharing Agreement. It is already difficult enough to understand the deadlines for filing Title VII claims. Claimants who master the intricacies have the right to expect that they will not be *penalized by a bureaucrat's non-compliance with the Worksharing Agreement.*

*Ford,* 81 F.3d at 312 (emphasis added); *see also Brown v. Crowe,* 963 F.2d 895, 899 (6th Cir.1992) ("Under the circumstances, to reject the plaintiff's claim due to the bureaucratic confusion between the two agencies would be manifestly unjust."). Because Berkoski has complied with the mandates of the worksharing agreement, the charge is deemed filed on the 272nd day, and Ashland's motion to dismiss will be denied.[4]

### III. CONCLUSION

Given the worksharing agreement in this case coupled with Berkoski's request for dual filing, the PHRC instantaneously waived its exclusive jurisdiction on the moment the charge was filed, the charge was deemed filed with the EEOC at the same moment, and the charge remained in a state of "suspended animation" until it was finally referred to the EEOC by the PHRC. Because the charge was deemed filed with the EEOC on the date that Berkoski filed it with the PHRC, it was filed within 300 days of the alleged discriminatory action and is thus timely under 42 U.S.C. § 2000e–5(c). Accordingly, Ashland's motion to dismiss will be denied.

---

4. Even if I were to hold that the charge was not properly filed with the EEOC by the 300th day as required under the statute, I would still not dismiss this case. As noted earlier, the worksharing agreement provides that the PHRC will file charges involving claims under Title VII and the ADEA within two working days of receipt. Further, Berkoski evidenced an intent to have a dual filing by marking a box that provided for referral of the action to the EEOC. Given these circumstances, the doctrine of equitable tolling would be appropriate. *See Brown,* 963 F.2d at 900 (holding that it would be improper to dismiss an action on the basis of a bureaucratic mistake).

Contrary to Ashland's assertion, *Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 755 (3d Cir.), *cert. denied* 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983), did not create a blanket prohibition against equitable tolling in Title VII cases when a plaintiff is represented by counsel. In fact, our Court of Appeals recognized that under "extraordinary" circumstances, equitable tolling is appropriate in Title VII situations, regardless of the presence of counsel. *Id.* Given the justified reliance by Berkoski's counsel on the worksharing agreement, I find that there are "extraordinary" circumstances in this case that warrant equitable tolling.